# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| JIMMY DARREN LECROY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | CV 12-8001-IPJ-JHE |
| ) | CR 08-295-IPJ-JHE |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Petitioner Jimmy LeCroy was driving a black Mercury cougar with his girlfriend Crystal Hammond on August 22, 2006, when he saw and rightfully feared a police checkpoint down the road. Upon viewing the checkpoint, Mr. LeCroy reversed his car and pulled into an empty driveway where Ms. Hammond threw a black bag containing a gun, two small bags of methamphetamine, and drug paraphernalia out of the car window and into bushes in the adjoining yard. Calhoun County Deputy Sheriffs observed LeCroy's car driving in reverse down the street and pursued the car and escorted it back to the checkpoint. In LeCroy's trunk, the sheriffs found a case matching the gun that had been thrown into the yard.

On July 29, 2008, petitioner was indicted on one count of possession with

1

intent to distribute fifty or more grams of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count One), one count of carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Three). *See* Indictment (crim. doc. 1). Following a jury trial, LeCroy was convicted on all three counts. *See* Jury Verdict (crim. doc. 17).[1] On December 6, 2010, this court entered judgment against LeCroy and sentenced him to a term of fifty-one (51) months as to Counts One and Three, separately, with each count to be served concurrently to the other, followed by a mandatory, consecutive term of sixty (60) months as to Count Two, not to run concurrently with any other sentence. *See* Judgment p. 2 (crim. doc. 27). LeCroy appealed to the Eleventh Circuit Court of Appeals, and the Eleventh Circuit affirmed this court's judgment. *See* Judgment of USCA (crim. doc. 37).

On January 19, 2012, LeCroy timely filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 1). The court ordered the government to answer LeCroy's petition (doc. 2) and the government

---

[1] The jury convicted LeCroy of possession with intent to distribute methamphetamine weighing less than fifty grams. *See* Jury Verdict p. 1 (crim. doc. 17).

filed a timely response (doc. 5). Petitioner filed a reply to the government's response (doc. 8). LeCroy remains in federal custody. The court, having considered petitioner's motion, the government's response, and petitioner's reply, finds that petitioner's motion is due to be denied for the reasons discussed below.

## STATEMENT OF FACTS

At petitioner's jury trial, Vanessa Lee testified that on August 22, 2006, she observed the Calhoun County Sheriff's Department checking licenses down the road from her house. Trial Transcript Vol. 1, pp. 14–15 (crim. doc. 33). Lee also observed a dark colored vehicle pull into her neighbor's driveway across the street from her home. She saw a man driving the car and a woman in the passenger seat. Lee testified that she observed the woman throw a bag from the car into the neighbor's bushes. *Id.* at pp. 20–21, 23. Matthew Hicks, Lee's son-in-law, testified that he was at Lee's home on August 22, 2006 and that he also saw the car drive into Ms. Lee's neighbor's driveway and saw a passenger throw an object out of the passenger window. *Id.* at 35, 37. Hicks testified that he went to the neighbor's home to see what the passenger had thrown out of the window and discovered that the object was a black bag with a pistol handle poking out of it. *Id.* at 39. Hicks then went to the checkpoint to inform the sheriffs of what he had seen. *Id.* at 42.

Calhoun County Deputy Sheriff Paul Star testified that he was working the

checkpoint on August 22, 2006. Trial Transcript Vol. 1, p. 50 (crim. doc. 33). Star further testified that he saw a black Mercury Cougar reverse directions in an attempt to avoid the checkpoint. *Id.* at 54–55. Star pursued the car, but could not locate it. *Id.* at 56. Another officer, Sergeant Sparks, radioed Star and informed him that the car was coming out of the driveway of a residence at 475 Mountain View Road. *Id.* at 57–58. Star drove to the residence where he and Sparks escorted the black Mercury Cougar back to the checkpoint. *Id.* at 58. Star further testified that he observed petitioner Jimmy LeCroy driving the vehicle and Crystal Hammond in the passenger seat. *Id.* at 59. Star also testified that Matthew Hicks approached him and informed him that he had seen someone throw an object out of the black vehicle. *Id.* at 61. Star then went to Vanessa Lee's residence, and Lee and Hicks directed Star to the neighbor's yard across the street. *Id.* at 62. Star went to the neighbor's yard where he observed "a small black zipper bag with a gun handle." *Id.* at 64. The black bag also held two plastic bags containing methamphetamines, a pair of scales, smoking pipes, q-tips, rolling papers, and small empty plastic bags. *Id.* at 65. Star also located a case in the trunk of the Cougar, which belonged to the gun recovered from Ms. Lee's neighbor's yard. *Id.* at 71.

    Petitioner's brother Brandon LeCroy testified that Crystal Hammond was

petitioner's girlfriend. Trial Transcript Vol. 2, pp. 9–10 (crim. doc. 34). Brandon further testified that in August of 2006, petitioner owned a black Mercury. *Id.* at 11. Petitioner's brother also testified that in August of 2006, petitioner was both a user and seller of methamphetamine. *Id.* at 13. Moreover, Brandon testified that in August of 2006, petitioner owned a Glock nine millimeter pistol, which Brandon sold to petitioner. *Id.* 17. Finally, Brandon testified that the gun recovered from the black bag in the yard was the gun that he had sold petitioner and that the box recovered from the car's trunk was the box that held the Glock. *Id.* at 21.

## DISCUSSION

**I.     Petitioner's Claim of Pre-Indictment and Post-Indictment Delay is Procedurally Defaulted**

Petitioner's argument that his indictment is due to be dismissed because of some pre-indictment or post-indictment delay is procedurally defaulted and, therefore, due to be dismissed. Petitioner's appeal to the Eleventh Circuit Court of Appeals did not include this claim, *see* Judgment of USCA p. 2 (crim. doc. 37 p. 5), and he alleges no cause for failing to assert the argument on appeal. To avoid procedurally defaulting on a claim, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal . . . ." *McKay v. U.S.*, 657 F.3d 1190, 1196 (11th Cir. 2011) (quoting *Lynn v. U.S.*, 365

F.3d 1225, 1234 (11th Cir. 2004)). If a defendant fails to present an available challenge on direct appeal, he "is barred from presenting that claim in a § 2255 proceeding." *Id.* A defendant's procedural default may be excused "(1) for cause and prejudice, or (2) for a miscarriage of justice, or actual innocence." *Id.* (citation omitted). The cause and prejudice exception requires a showing of cause for failing to raise the claim and actual prejudice resulting from such failure. *Id.* To establish cause, the defendant "must show that some objective factor external to the defense prevented [the movant] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [the movant's] own conduct." *Lynn v. U.S.*, 365 F.3d 1225, 1235 (11th Cir. 2004). A defendant establishes prejudice by showing that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) (quotation marks and citation omitted).

LeCroy asserts absolutely no cause for failing to raise his delay claim on direct appeal.[2] Because an exception to the procedural default doctrine requires a

---

[2] In his § 2255 motion, petitioner claims that his indictment should be dismissed due to pre-indictment and post-indictment delay. *See* § 2255 Motion p. 5 (doc. 1). Petitioner then tries to re-characterize this claim as an ineffective assistance of counsel claim in his reply to the government's response. *See* Movant's Response to the Government's Answer to LeCroy's § 2255 Motion p. 22 (doc. 8). Although ineffective assistance of counsel may establish cause for procedural default purposes, the ineffective assistance claim must have merit. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000). Petitioner asserts no arguments or facts to support his claim of ineffective assistance of counsel in this regard. Rather, in his reply,

showing of cause and prejudice, LeCroy's delay claim fails without any consideration of the prejudice element. Nevertheless, LeCroy also cannot establish that he would be prejudiced should the court consider his delay claim procedurally defaulted. LeCroy claims that the delay in his case resulted in his inability to produce the testimony of key witness Carter Walden. *See* Movant's Response to the Government's Answer to LeCroy's § 2255 Motion p. 23 (doc. 8). Yet, as respondent asserts, LeCroy cannot establish that he was prejudiced by the absence of Walden's testimony because the government presented a wealth of evidence supporting LeCroy's conviction. Namely, petitioner's brother, Brandon LeCroy testified that he sold LeCroy the Glock 9 millimeter found in the yard and the gun's case found in LeCroy's trunk. Trial Transcript Vol. 2 pp. 17, 21 (crim. doc. 34). Brandon LeCroy also testified that LeCroy sold and used methamphetamine at the time he attempted to avoid the road block. *Id.* at 13. Two officers and two witnesses observed LeCroy attempting to avoid the checkpoint. Trial Transcript

---

petitioner asserts that the testimony of Carter Walden, who died prior to petitioner's trial, was necessary to discredit Brandon LeCroy's testimony and that the delay in his case prejudiced him. Reply pp. 22–24 (doc. 8). This argument clearly has naught to do with LeCroy's counsel's performance. Moreover, the government presented a wealth of evidence supporting LeCroy's conviction and there is not a reasonable probability that Walden's testimony would have changed the outcome. *See Strickland v. Washington*, 466 U.S. 668, 691–91, 694 (1984) (noting that ineffective assistance of counsel requires a showing of deficient performance and prejudice and that prejudice is established where a defendant shows "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

Vol. 1 pp. 20–21, 35, 54–55, 57–58 (crim. doc. 33). Moreover, two witnesses saw a black bag thrown from LeCroy's car, which officers later determined contained a Glock 9 millimeter and methamphetamine. *Id.* at 23, 37, 64–65. Additionally, the case matching the gun found in the yard was found in LeCroy's trunk. *Id.* at 71.[3] Thus, LeCroy cannot establish that he was prejudiced by the delay. This alleged trial error, and the resulting inability to present Walden's testimony, did not substantially disadvantage LeCroy's defense or deny him fundamental fairness. LeCroy also makes no argument that procedural default of his delay claim will result in a miscarriage of justice. Nor does LeCroy assert that he is actually innocent of the crime of conviction. Thus, LeCroy's delay claim may not be excused from procedural default and is due to be dismissed.

## II.   Ineffective Assistance of Counsel

Petitioner also asserts three claims of ineffective assistance of counsel. To establish ineffective assistance of counsel, a defendant must show that the

---

[3] *See also* Judgment of the USCA p. 7 (crim. doc. 37 p. 10) ("That there was enough evidence to establish Lecroy's guilt is an understatement. As we have already mentioned, two eyewitnesses saw an object thrown out of the window of a dark vehicle owned by Lecroy. A deputy sheriff stopped the same vehicle and found Lecroy driving it shortly after the object was thrown. Another deputy sheriff recovered a black bag from where witnesses said the object was thrown, and in it he found methamphetamine and a handgun along with other common tools of the drug trade. The serial number on the handgun found in the bag matched the serial number on a gun manufacturer's box found in the trunk of Lecroy's car. Lecroy's brother testified that he sold the handgun to Lecroy and that Lecroy was dealing methamphetamine at the time of the events in question.").

lawyer's performance was so objectively unreasonable as to be deficient and that the deficiency prejudiced the client. *Strickland*, 466 U.S. at 692. The test for deficient performance by counsel is an objective one. *Id.* at 688. Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689. A showing of ineffective assistance of counsel requires proof "that no competent counsel would have taken the action that [petitioner's] counsel did take." *Ward*, 592 F.3d at 1164 (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000)). A petitioner may establish prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Johnson v. Alabama*, 256 F.3d 1156, 1177 (11th Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). Yet "because both parts of the test must be satisfied to show a Sixth Amendment violation, a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." *Ward*, 592 F.3d at 1163 (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)).

    LeCroy first argues that his counsel rendered ineffective assistance by failing to object to the "suprise [sic] testimony of a coerced confession." § 2255

Motion p. 4 (doc. 1). In support of this contention, LeCroy alleges that while he was at his mother's home, Agent Nesmith, while conducting a warrantless search of the residence, told LeCroy that "if he did not confess to the 'road block' case, he would personally see to it that Petitioner would 'not see the light of day' . . ." even though petitioner allegedly told Agent Nesmith that he was innocent and did not want to speak with him. *Id.* Petitioner further asserts that Agent Nesmith "stormed around" and "told Petitioner that he was a government agent and could do anything he wanted to." *Id.* Petitioner claims that he informed his lawyer of these happenings "while Agent Nesmith was testifying at the Petitioner's trial." *Id.* at 7. In his reply, LeCroy cites no other deficient performance, but relies on muddy allegations that his counsel was ineffective for "not discovering" Agent Nesmith's testimony and that "the blame falls clearly on defense counsel regardless who dropped the ball." Reply p. 25 (doc. 8). The crux of LeCroy's ineffective assistance claim, then, is that his counsel failed to object to Agenty Nesmith's testimony about petitioner's confession.

    LeCroy's contention that his attorney performed deficiently by failing to object to Nesmith's testimony lacks merit, because LeCroy cannot establish that he was prejudiced by his attorney's alleged deficiency. The premise of LeCroy's argument is that had counsel objected to Agent Nesmith's testimony about

LeCroy's confession, there is a reasonable probability that the result of LeCroy's trial would have been different. Yet LeCroy cannot establish prejudice because the government produced a wealth of evidence supporting LeCroy's conviction. *See supra part I*. Accordingly, there is no reasonable probability that the jury would not have found LeCroy guilty had Nesmith's testimony about the confession been excluded. Because the ineffective assistance of counsel test requires a defendant to meet both the deficient performance and prejudice prongs, LeCroy's claim that his attorney rendered ineffective assistance by failing to object to Agent Nesmith's testimony is due to be dismissed.[4]

Next, LeCroy argues that his trial counsel was ineffective for failing to inform the trial court of alleged juror tampering. § 2255 Motion p. 4 (doc. 1).

---

[4] The court also notes that LeCroy's argument that his attorney performed deficiently is weak, at best, given that LeCroy failed to inform his counsel that the confession was coerced until Agent Nesmith began testifying at trial. § 2255 motion p. 7 (doc. 1). It is well settled that "[m]otions to suppress illegally obtained evidence must be made prior to trial or such objections are deemed waived . . . ." *United States v. Lall*, 607 F.3d 1277, 1288 (11th Cir. 2010) (citing F.R.C.P. 12(b)(3)). While Rule 12(e) permits a court to grant relief from the waiver for good cause, "[n]o good cause exists if 'the defendant had all the information necessary to bring a Rule 12(b) motion before the date set for pretrial motions, but failed to file it by that date.'" *United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) (quoting *United States v. Seher*, 562 F.3d 1244, 1359 n. 15 (11th Cir. 2009)). Here, the only cause for failing to file a motion to suppress Agent Nesmith's testimony was LeCroy's failure to tell his attorney about the confession prior to trial, which does not constitute good cause. LeCroy contends that Agent Nesmith's testimony was a surprise. While LeCroy debates the voluntariness of the confession, it is highly unlikely that LeCroy was altogether surprised by testimony of a confession that he plainly admits he gave. LeCroy asserts no cause for failing to inform his attorney of the alleged coerced confession, which would have permitted his attorney to timely file a motion to suppress.

LeCroy claims that his mother observed a juror talking on the phone about LeCroy's trial. *Id.* Marie Humphries, LeCroy's mother, also swore by affidavit that she overheard the juror telling someone that "she thought [LeCroy] was guilty" and that "the drugs and gun were seen thrown? [sic] out of the car, and [LeCroy] was a felon and wasn't supposed to have a gun." *Id.* at 10. Additionally, Humphries swore that when she mentioned the incident to LeCroy's counsel, the attorney responded that "it happens all the time." *Id.* Again, LeCroy's claim of ineffective assistance of counsel fails because he cannot establish that he was prejudiced by his trial counsel's alleged deficiency. There is no reasonable probability that the outcome of LeCroy's trial would have been different had his counsel informed the trial court of the juror's alleged phone conversation.

"A juror's exposure to extraneous material or influence requires a new trial if the exposure poses a reasonable probability of prejudice to the defendant." *United States v. Khanani*, 502 F.3d 1281, 1291 (11th Cir. 2007) (quotation marks and citation omitted). Here, the most LeCroy's allegations establish is that the juror may have been talking on the phone about the facts of the case and her impressions of those facts. LeCroy provides no support for the conclusion that the juror's impressions of the case were at all affected by her phone conversation. Moreover, there is no reasonable probability that the juror's phone conversation as

alleged by LeCroy would have prejudiced him, because the government produced a vast amount of evidence supporting LeCroy's conviction. *See supra part I*. Because there is no reasonable probability that the juror's phone conversation prejudiced LeCroy, there is no reasonable probability that had his attorney relayed that information to the trial court, LeCroy would have received a new trial. In other words, there is no reasonable probability that absent his counsel's alleged deficincy, the outcome of LeCroy's trial would have been any different. Accordingly, LeCroy fails to establish that he was prejudiced by his attorney's failure to inform the trial court of the alleged jury tampering, and his ineffective assistance of counsel claim fails in this regard.

    Finally, LeCroy argues that trial counsel rendered ineffective assistance by failing to "persue [sic] discovery evidence that would have exonerated Petitioner and discredit the Government's main witness." § 2255 Motion p. 4 (doc. 1). In essence, LeCroy's claim is that his trial counsel failed to pursue evidence to discredit Brandon LeCroy's testimony. Additionally, LeCroy argues that at the time he encountered the road block, Crystal Hammond's car was being serviced and she transferred her items to LeCroy's trunk when he gave her a ride. *Id.* at 4, 7. LeCroy further asserts that he attempted to avoid the road-block because he was driving with a revoked license. *Id.* at 7.

LeCroy's trial counsel, William Brower, swore by affidavit that Brandon LeCroy could not have been discredited any more than he already was. Attorney Aff. p. 3 (doc. 5-1). And the court agrees that LeCroy's trial counsel did attack Brandon LeCroy's credibility by eliciting the following testimony on cross-examination: Brandon had five convictions, trial transcript vol. 2 pp. 32–33 (crim. doc. 34); Brandon had been a methamphetamine and cocaine user for several years, *id.* at 34–35; in July of 2006, Brandon traded "an eight ball for a Glock nine millimeter pistol," *id.* at 35; and Brandon hoped to receive a sentence reduction in return for his testimony against his brother, *id.* at 38. Additionally, LeCroy's trial counsel posits in his affidavit that he gave little thought to LeCroy's allegations concerning Crystal Hammond's ownership of the gun, drugs and drug paraphernalia, because the drugs and gun were found in LeCroy's car, testimony established that LeCroy previously owned the gun, LeCroy was driving the car when the gun and drugs were thrown out of the window, and LeCroy was seen attempting to avoid the road block. Attorney Aff. p. 3 (doc. 5-1).

Considering the foregoing, trial counsel's decision not to further investigate LeCroy's allegations was not outside the wide range of reasonable professional assistance. Accordingly, LeCroy has failed to establish that his trial counsel performed deficiently. Moreover, LeCroy again fails to establish that he was

prejudiced by any alleged deficiency by his trial counsel. Importantly, trial counsel did attack Brandon LeCroy's credibility and the government produced a wealth of evidence supporting LeCroy's conviction. *See supra part I.* Thus, there is no reasonable probability that the outcome of LeCroy's trial would have been any different had trial counsel further investigated LeCroy's allegations or further attempted to discredited Brandon LeCroy's testimony.

## CONCLUSION

Having considered the foregoing, the court finds that petitioner's motion is due to be **DENIED**. The court shall so order by a separate order.

**DONE** and **ORDERED** this the 19th day of August 2014.

_____
INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE